**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**GILBERT H.,**

                                      **Plaintiff,**

         vs.                                                    **5:20-CV-80**
                                                                **(MAD)**

**ANDREW SAUL,** *Commissioner of*
*Social Security*,

                                      **Defendant.**

---

**APPEARANCES:**                          **OF COUNSEL:**

**OLINSKY LAW GROUP**                      **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **MICHAEL L. HENRY, ESQ.**
625 JFK Building
15 New Sudbury Street
Boston, MA 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Gilbert H., commenced this action on January 22, 2020, pursuant to 42 U.S.C. §§

405(g) and 1383(c), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for Social Security Disability Insurance ("SSDI").  *See* Dkt. No. 1.  On

August 19, 2016, Plaintiff filed an application for disability insurance benefits, alleging an onset

date of January 1, 2015.  *See* Administrative Transcript ("Tr.") at 143.  Plaintiff's application was

denied and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ").

*See id.* at 65, 81.  A hearing was held before ALJ Bruce Fein on October 4, 2018.  *See id.* at 32-55.  On November 15, 2018, the ALJ issued a decision denying Plaintiff's application.  *See id.* at 7-19.  Plaintiff subsequently requested review by the Appeals Council and was denied such review.  *See id.* at 1-3.  Presently before the Court are the parties' cross-motions for judgment on the pleadings.  *See* Dkt. Nos. 10, 11.

## II. BACKGROUND

At the time of his application, Plaintiff was forty-two years old.  *See* Tr. at 56.  Plaintiff has an eleventh grade education and previously worked in construction, carrying and transporting drywall.  *See id.* at 38, 40-41, 56, 175.  The record indicates that Plaintiff suffers from a variety of conditions including status-post L5-S1 posterior interbody fusion and status-post right knee arthroscopy.  *See id.* at 12.  The record evidence in this case is undisputed and the Court adopts the parties' factual recitations.  *See* Dkt. No. 10 at 1-10; Dkt. No. 11 at 2-10.

## III. DISCUSSION

### A.    Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

2

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted).  "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code Section 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.       The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 1, 2015, the alleged onset date.  *See* Tr. at 12.  At step

two, the ALJ concluded that Plaintiff had the following severe impairments: status-post L5-S1

posterior interbody fusion and status-post right knee arthroscopy.  *See id.*  At step three, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments that

functionally equaled the severity of any impairment listed in C.F.R. Part 404, Subpart P,

Appendix 1.  *See id.* at 13.  The ALJ then found that Plaintiff has the residual functional capacity

to perform light work with the following limitations: he can occasionally climb ramps and stairs,

balance, stoop, kneel, crouch, and crawl; and he can never climb ropes, ladders, or scaffolds.

*Id.* at 13.  At step four, the ALJ found that Plaintiff could not perform any past relevant work.  *See*

*id.* at 18.  At the fifth and final step of the analysis, the ALJ determined that based on Plaintiff's

age, education, work experience, and residual functional capacity in conjunction with the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, that Plaintiff could

perform jobs that exist in significant numbers in the national economy.  *Id.* at 18.

**C.       The ALJ Properly Examined and Weighed Opinion Evidence**

Plaintiff asserts that the ALJ improperly weighed the opinions of Dr. Bergeron[1] and Dr.

Lorensen.  Dkt. No. 10 at 11.  Specifically, Plaintiff contends that the record was not fully

developed therefore prohibiting the ALJ from properly assessing opinion evidence.  *Id.*

"It is well settled that an ALJ is entitled to rely upon the opinions of both examining and

non-examining State agency medical consultants, since such consultants are deemed to be

---

[1] Plaintiff comments on the weight the ALJ afforded Dr. Bergeron's opinion but refrains from making any argument as to why or how the ALJ's evaluation of Dr. Bergeron's opinion was improper.  Therefore, the Court will not examine the ALJ's weighing of Dr. Bergeron's opinion.

qualified experts in the field of social security disability." *Monroe v. Comm'r of Soc. Sec.*, No. 5:15CV1235, 2016 WL 7971330, *7 (N.D.N.Y. Dec. 29, 2016), *report and recommendation adopted sub nom. Monroe v. Colvin*, No. 15-CV-1235, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017); 20 C.F.R. § 404.1527(c)(1).  When weighing opinion evidence, the ALJ must consider the length, nature, and extent of the treatment relationship; relevant evidence supporting the opinion; the opinion's consistency with the record as a whole; the specialization of the opinion's source; and any other factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(c).

Dr. Lorensen examined Plaintiff on September 30, 2016 and noted that Plaintiff had a normal gait, could walk without difficulty, squat at 60 percent, and did not require any assistance getting on and off the exam table.  Tr. at 536.  Plaintiff's lumbar spine showed "flexion 50 degrees, extension declined, and lateral flexion 20 degrees bilaterally.  SLR negative bilaterally." *Id.*  Plaintiff's shoulders demonstrated a forward elevation and abduction of 100 degrees bilaterally.  *Id.*  Similarly, Plaintiff had full range of motion in his elbows, forearms, and wrists bilaterally.  *Id.*  Plaintiff's right and left knee flexions were 100 and 130 degrees respectively.  *Id.* Dr. Lorensen also noted that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  *Id.*  Dr. Lorensen opined that Plaintiff had "[n]o gross limitations sitting, standing, walking, or handling small objects with [his] hands." *Id.* at 538.  However, Plaintiff had "moderate limitations for bending, lifting, reaching, kneeling, and squatting."  *Id.*

Plaintiff asserts that Dr. Lorenson's notation of moderate limitations in bending, lifting, reaching, kneeling, and squatting was impermissibly vague and the ALJ had a duty to further develop the record to render Dr. Lorenson's opinion more concrete.  Dkt. No. 10 at 13. Specifically, Plaintiff asserts that the ALJ should have requested additional medical records or

ordered a consultative examination.  By failing to do so, Plaintiff asserts that the ALJ improperly

failed to develop the record and therefore the case must be remanded.  The Court disagrees.

An ALJ has the affirmative duty to develop the record "in light of 'the essentially

non-adversarial nature of a benefits proceeding.'"  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)

(quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Swiantek v.

Commissioner*, 588 Fed. Appx. 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a

civil action on the ground of inadequate development of the record, the issue is whether the

missing evidence is significant."  *Santiago v. Astrue*, No. 3:10-cv-937, 2011 WL 4460206, *2 (D.

Conn. Sept. 27, 2011) (citing *Pratts*, 94 F.3d at 37-38 ).

The Regulations provide that an ALJ "will develop [the plaintiff's] complete medical

history for at least the 12 months preceding the month in which" the plaintiff files an application

for social security disability benefits, "unless there is a reason to believe that development of an

earlier period is necessary or unless [the plaintiff] say[s] that [his or her] disability began less than

12 months before [the plaintiff] filed [his or her] application."  20 C.F.R. § 404.1512(b)(1).

The Regulations further provide that the ALJ "will make every reasonable effort to help

[the plaintiff] get medical evidence from [his or her] own medical sources and entities that

maintain [his or her] medical sources' evidence when [the plaintiff] give[s] [the ALJ] permission

to request the reports."  *Id.*  "Every reasonable effort means that [the ALJ] will make an initial

request for evidence from [the plaintiff's] medical source or entity that maintains [the plaintiff's]

medical source's evidence and . . . if the evidence has not been received, [the ALJ] will make one

follow-up request to obtain the medical evidence necessary to make a determination."  *Id.*

The ALJ does not have a duty to request additional evidence where the evidence in the

record is "adequate for [the ALJ] to make a determination as to disability."  *Perez v. Chater*, 77

F.3d 41, 48 (2d Cir. 1996). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

"The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record: '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Santiago*, No. 3:10-cv-937, 2011 WL 4460206, at *2 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist[,] . . . [t]hat argument is insufficient to carry his burden." *Santiago*, 2011 WL 4460206, at *2 (rejecting the argument that the ALJ was required to obtain additional medical records where the plaintiff did not attempt to obtain the medical records following the decision or indicate their importance); *see also Tavarez v. Astrue*, No. 11-CV-2784, 2012 WL 2860797, *4 (E.D.N.Y. July 11, 2012) (holding that the plaintiff's general arguments that records were missing failed to establish the missing evidence was significant).

Foremost, the Court rejects Plaintiff's assertion that Dr. Lorensen's opinion was vague. "A consultative examiner's report which concludes that a plaintiff's condition is 'mild' or 'moderate,' without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work." *Monroe*, 2016 WL 7971330, at *7. "Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations." *Id*. "Courts have held that terms such as 'mild' and 'moderate' pass substantial evidence muster when medical evidence shows relatively little physical impairment." *Id*. "[M]edical source statements from

consultative examiners which provide vague language may be rendered 'more concrete' by the facts in the underlying opinion and other opinion evidence." *Id.* A court may only remand if "a reasonable factfinder would have to conclude that [the plaintiff] lacked the ability to perform light work with the limitations articulated by the ALJ." *White v. Berryhill*, 753 Fed. Appx. 80, 82 (2d Cir. 2019) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)) (internal quotation marks omitted).

Where the record shows little physical impairment, an ALJ may make a common sense judgment that a medical source statement is unsupported by the record. *See Waldau v. Astrue*, No. 5:11-CV-925, 2012 WL 6681262, at *3-4 (N.D.N.Y. Dec. 21, 2012). Thus, where the record shows little physical impairment, an ALJ does not err in assigning little weight to a medical source statement that describes the plaintiff's limitations as moderate. *See id.* (holding that the ALJ did not err in assigning little weight to a treating physician's opinion describing the plaintiff's limitations as "mild to moderate" and the record demonstrated little physical impairment).

The ALJ assigned "some weight" to Dr. Lorensen's opinion assessing no limitations sitting, standing, walking, or handling small objects with his hands and "little weight" to the latter section of the opinion assigning moderate limitations for bending, lifting, reaching, kneeling, and squatting. Tr. at 16-17. The ALJ assigned little weight to the latter portion of the opinion as he determined it was not supported by Dr. Lorensen's examination of Plaintiff and was inconsistent with Plaintiff's medical records and activities of daily living. *Id*. at 17. While Dr. Lorensen determined that Plaintiff had moderate limitations lifting and reaching, on June 14, 2016, Plaintiff's orthopedist noted that Plaintiff had a normal range of motion in his bilateral shoulders, had reached maximum medical improvement with a temporary impairment of zero percent, and could return to work without any restrictions. *Id.* at 362-363. Dr. Lorensen also determined that

Plaintiff had a normal range of motion in his shoulders despite his assertions of pain.  *Id.* at 547.
As the ALJ noted, Plaintiff's activities of daily living included cooking, cleaning, doing the
laundry, shopping, showering, dressing, driving, and fishing.  *Id.* at 17, 46, 51, 168-170, 536.  At
the ALJ hearing, Plaintiff noted that he could lift up to twenty pounds and had no issues grocery
shopping, including lifting and carrying his bags.  *Id.* at 46.

Despite finding that Plaintiff had moderate limitations bending, kneeling, and squatting,
Dr. Lorensen noted that Plaintiff could squat to 60 percent, had a normal gait, normal stance,
could walk on his toes without difficulty, did not require the use of an assistive device, and did
not require any help getting on or off the exam table.  *Id.* at 536.  While Plaintiff's medical records
following his surgeries do indicate more serious limitations, as the ALJ noted–Plaintiff's more
recent medical records demonstrate significant improvement in his abilities.  *Id.* at 362, 359, 384
(noting Plaintiff's improvement in symptomology and normal rehabilitation).

The ALJ has provided more than a mere scintilla of evidence and thus enough evidence
that "a reasonable mind might accept as adequate to support" that Plaintiff's condition had
improved and that there was little evidence of a current physical impairment.  *Williams on Behalf
of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S.
389, 401 (1971)) (internal quotation marks omitted).  The opinion was therefore sufficiently
concrete for the ALJ to render a common sense determination that Dr. Lorensen's opinion was
inconsistent with the record and entitled to little weight.

Second, even assuming, *arguendo*, that Dr. Lorensen's opinion was vague and the ALJ
could not render a common sense decision, the ALJ did not have a duty to request additional
medical records because there was not an obvious gap in the record.  There is not an obvious gap
in the record where a plaintiff and his counsel affirmatively answer that the record is complete at

the ALJ hearing.  *Orts v. Astrue*, No. 5:11-CV-0512, 2013 WL 85071, *3 (N.D.N.Y. Jan. 7, 2013); *see also Jason C. v. Berryhill*, No. 6:17-CV-01106, 2019 WL 1409804, *5 (N.D.N.Y. Mar. 28, 2019) ("An ALJ has taken reasonable steps to complete the medical record when she asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively"); *Streeter v. Comm'r of Soc. Sec.*, No. 5:07–CV–858, 2011 WL 1576959, *4 (N.D.N.Y. Apr. 26, 2011).  While Plaintiff had notified the ALJ that some documents had been outstanding, Plaintiff informed the ALJ at the October 4, 2018 hearing that the evidence was no longer outstanding and the record was complete.  Tr. at 40.  As there was no obvious gap in the record, the ALJ did not have a duty to request additional medical records.

Plaintiff's argument that a consultative examination should have been ordered is similarly negated by his failure to demonstrate an obvious gap in the record or that additional evidence was required to determine that he was disabled.  20 C.F.R. § 404.1517; *see also Cox v. Astrue,* 993 F. Supp. 2d 169, 178 (N.D.N.Y. 2012) (holding that an ALJ is not required to order a consultative examination where the plaintiff is represented by counsel and there is no conflict, inconsistency, ambiguity, or insufficiency in the evidence that must be resolved).

Finally, Plaintiff fails to specify what, if any, medical records are missing or their significance.  Rather, Plaintiff indicated that no medical records existed as Plaintiff stated he did not seek medical treatment due to a lack of health insurance.  Tr. at 49; Dkt. No. 10 at 18.  Plaintiff's mere assertion that the ALJ should have attempted to secure more records to render Dr. Lorensen's opinion more concrete is insufficient to demonstrate a harmful error.  *Santiago*, 2011 WL 4460206, at *2; *Tavarez*, 2012 WL 2860797, at *4.  Plaintiff has thus failed to demonstrate that he was harmed by the alleged inadequacy of the record.

Plaintiff has failed to demonstrate that the ALJ was unable to render a common sense decision regarding Dr. Lorensen's opinion or that there was an obvious gap in the record.  Plaintiff also has not demonstrated any harm suffered by potentially missing records.  Accordingly, the Court finds that the ALJ appropriately considered and weighed Dr. Lorensen's opinion and there was not an obvious gap in the record.

**D.      The ALJ's RFC Determination and Step Two Findings Regarding Plaintiff's Shoulder Impairment are Supported By Substantial Evidence**

Plaintiff asserts that the ALJ improperly determined that his shoulder impairment was non-severe and therefore the RFC determination was not supported by substantial evidence.  Dkt. No. 10 at 17.  The Court disagrees.

Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).  The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams*, 859 F.2d at 258(quoting *Richardson*, 402 U.S. at 401). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

Much of Plaintiff's argument regarding whether the ALJ's opinion is supported by substantial evidence is focused on the ALJ improper weighing of Dr. Lorensen's opinion.  Dkt. No. 10 at 14-15.  The Court has already determined that substantial evidence supports the ALJ's

weighing of Dr. Lorensen's opinion and that the ALJ did not have a duty to order a consultative examination or request additional medical records.  The Court will not reexamine these issues.

Plaintiff's remaining argument is similarly unavailing.  Plaintiff asserts that substantial evidence supports that his shoulder impairment was severe and thus the ALJ's Step Two findings and RFC determination are unsupported by substantial evidence.  The Court disagrees.

It is irrelevant that substantial evidence supports that Plaintiff was in fact disabled. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." *Bonet v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013) (summary order).  Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Substantial evidence supports that Plaintiff's shoulder impairment had improved since his surgery and was not severe at the time of the ALJ hearing or decision.  On December 7, 2015, Plaintiff underwent surgery for his left shoulder.  Tr. at 392.  Despite Plaintiff's mild global loss in range of motion, Plaintiff's physician recorded on January 26, 2016, that Plaintiff's rehabilitation was progressing normally and Plaintiff denied any increase in pain.  *Id.* at 384, 386.  By March 11, 2016, Plaintiff's physician reduced Plaintiff's temporary disability percentage from 100 percent to 50 percent.  *Id.* at 378.  On June 14, 2016, just six months after surgery and two months before filing an application for disability insurance benefits, Plaintiff's physician determined that Plaintiff had a normal range of motion in his shoulders, a zero percent temporary disability, achieved maximum medical improvement, and could return to work with no restrictions.  *Id.* at 363.  On October 14, 2016, Dr. Nicholas, a state agency reviewer, determined that Plaintiff could

occasionally lift twenty pounds and frequently ten.  *Id.* at 61.  Dr. Nicholas similarly concluded that Plaintiff could perform light work.

Consistent with the record, Plaintiff's activities of daily living demonstrate that his shoulder impairment was non-severe.  Plaintiff's activities included cooking, cleaning, doing the laundry, shopping, showering, dressing, driving, and fishing.  *Id.* at 17, 46, 51, 168-170, 536. Further, at the ALJ hearing, Plaintiff noted that he could lift up to twenty pounds and had no issue grocery shopping, including lifting and carrying his bags.  *Id.* at 46.

The ALJ has provided more than a mere scintilla of evidence and therefore enough evidence that "a reasonable mind might accept as adequate to support" that Plaintiff's shoulder impairment had improved and was thus non-severe.  *Williams*, 859 F.2d at 258 (quoting *Richardson*, 402 U.S. at 401) (internal quotation marks omitted).  The ALJ's determination that Plaintiff's shoulder impairment is non-severe and RFC determination are therefore supported by substantial evidence.

### E.     The ALJ's Assessment of Plaintiff's Subjective Complaints was Supported By Substantial Evidence

Plaintiff asserts that the ALJ improperly evaluated his statements regarding his symptoms by failing to adequately consider the factors outlined in Social Security Ruling 16-3p.  Dkt. No. 10 at 19.  The Court disagrees.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the

extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Genier*, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c). While statements of pain alone are generally insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence. *Id.* at § 404.1529(c)(2).

Plaintiff asserts that the ALJ erred at the second step of the credibility analysis. Dkt. No. 10 at 19. Plaintiff relies on *Henningsen* for support that the ALJ improperly evaluated his credibility and rejected his assertions of pain. *Id.* (citing *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015)). However, in *Henningsen*, the government consented to remand and therefore the Eastern District of New York did not engage in a thorough analysis of the ALJ's assessment of the plaintiff's credibility. *Henningsen*, 111 F. Supp. 3d at 267. Thus, the Court cannot distinguish from or rely on this case as the basis for this decision.

Rather, the Court relies on *Wetzel v. Berryhill*, 783 Fed. Appx. 44, 47 (2d Cir. 2019). In *Wetzel*, the Second Circuit affirmed the decision of the Northern District determining that the ALJ properly examined the plaintiff's credibility where "the ALJ properly identified at least three different bases for finding that [the plaintiff] was not credible, including inconsistency with the objective medical evidence and his testimony about his intact activities of daily living." *Id.*

As in *Wetzel*, the ALJ properly identified at least three different bases for finding that Plaintiff was not credible, including inconsistency with the objective medical evidence and his

testimony about his intact activities of daily living.  At the second step of his credibility analysis, the ALJ determined that Plaintiff's allegations of pain were inconsistent with the record.  Despite claiming at the ALJ hearing that he was in significant pain, which he rated as a 10/10 and then a 5/10, Plaintiff's most recent medical records demonstrated that he had significant improvement in his symptoms and pain.  Tr. at 39-40, 359, 362, 384 (noting Plaintiff's improvement in symptomology and normal rehabilitation).

Plaintiff's medical records also indicated that he experienced mild pain, between five and six out of ten,[2] his doctors routinely noted that he did not appear to be in pain and had relatively normal exams, with the exception of consistent recordings of a moderately limited range of motion in his lumbar spine.  *Id*. at 268, 273, 275, 283, 290, 296, 305-306, 359, 374, 382, 393, 431-432.  The ALJ also noted that Plaintiff's activities of daily living conflicted with his assertions of pain.  *Id.* at 17 (noting Plaintiff's activities included cooking, cleaning, doing the laundry, shopping, showering, dressing, driving, and fishing).

The record demonstrates that Plaintiff's assertions of pain were not substantiated by examinations.  Notably, on August 22, 2016, despite claiming that his condition was worsening, Plaintiff's treating orthopedist determined that Plaintiff did not appear to be in pain and determined that Plaintiff could return to work with only lifting and repetitive bending restrictions. *Id.* at 354.

The ALJ also noted that despite claiming that his symptoms had worsened, Plaintiff did not seek further treatment.  *Id.* at 15.  Plaintiff also does not indicate when he became uninsured or if he attempted to locate free or low cost medical care.  The timing of Plaintiff's loss of

---

[2] The Court notes that Plaintiff told his physicians that he experiences pain varying from five to eight out of ten on a daily basis.  *Id*. at 296.  The Court is referencing the pain he expressed during his medical appointments, which was then evaluated by his physicians.

coverage would be particularly telling as prior to August 22, 2016, Plaintiff sought medical care very frequently, seeing his orthopedist as frequently as every month until October 2015, and then bi-monthly until July 2016 when he resumed monthly appointments again. *Id*. at 258, 268, 273, 281, 290, 296, 305, 307, 354, 357, 359, 374, 380. The ALJ properly noted that Plaintiff failed to follow up regarding his worsening pain and did not provide the ALJ with sufficient evidence that it was due to an inability to afford continued medical care. *See Canabush v. Comm'r of Soc. Sec.*, No. 1:13-CV-429, 2015 WL 1609721, *7 (N.D.N.Y. Apr. 10, 2015) (holding that the ALJ properly considered the plaintiff's failure to comply with his treatment when analyzing the plaintiff's credibility where he failed to provide evidence demonstrating a lack of insurance as a reason for his failure to follow his physicians' orders despite asserting such).

The ALJ did not rely solely on a lack of substantiating medical evidence to determine that Plaintiff's allegations of pain were not consistent with the record. The ALJ's analysis of Plaintiff's credibility is supported by substantial evidence.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 20, 2020
        Albany, New York

Mae A. D'Agostino
U.S. District Judge